THOMAS H. DORSEY AND ANN HIS WIFE *vs.* ESSEX DORSEY AND WIFE, AND OTHERS.—*December* 1840.

A bill filed by legatees and devisees against husband and wife for an account, alleged that the wife while *sole* was executrix of the testator, and guardian of the complainants, and that the husband, after his marriage, also became their guardian, and both had received the funds of the estate, the wife while *sole* and the husband after his marriage; it was agreed, that "all matters in controversy in this cause be referred to the arbitrament and award of S." An award being filed, directing the husband and wife to pay a *sum in gross*, to each complainant as due from the testator's personal estate, the rents of his real estate, and balances on the guardians accounts, it was set aside for uncertainty, in not stating on account of which of the defendants, and in what character, the indebtedness accrued.

APPEAL from the Court of Chancery.

On the 20th day of February 1834, the appellees filed their bill of complaint in the Court of Chancery, against the appellants, for an account and payment of large sums of money which were claimed to be due to them by the appellants. The appellees are the children and representatives of children, legatees and devisees of *Richard Dorsey*, deceased. The appellant *Ann* is his widow, and the executrix named in his last will and testament. She proved the will and obtained letters testamentary thereon from the orphans' court of *Anne Arundel* county. She was likewise by the same court appointed guardian to her deceased husband's children. After her intermarriage with the other appellant *Thomas*, he was appointed guardian for those children in her stead. Various administration and guardian accounts were passed by the appellant *Ann* during her widowhood. Since the intermarriage of the appellants, other administration accounts have been passed by them, and the appellant *Thomas*, as guardian, has passed sundry accounts. The appellees, by their bill, ask a review of all these accounts, and claim, that upon their correct adjustment, large balances will be due them.

On the 25th day of March 1836, the appellants filed a voluminous answer to this bill, in which they defend themselves against the equities claimed by the appellees.

On the same day the counsel for the parties entered into the following agreement:

It is agreed in this cause, that all matters in controversy in this cause be referred to the arbitrament and award of *Somerville Pinkney*, of the city of *Annapolis*; that the defendants shall state upon oath all sums of money received by them or either of them, in addition to the sums charged against them in their administration and guardians' accounts, and shall also answer upon oath such interrogatories as shall be put to them by the complainants; that the complainants shall state upon oath all advances of money or property, payments and loans, made by the defendants or either of them to the complainants or any of them, or any other just claim of the defendants against any of them, and shall also answer on oath such interrogatories as shall be put to them by the defendants; that the propriety of all interrogatories aforesaid, and the sufficiency and effect of the answers to be determined by the referee, and to be equally admissible as testimony in the cause; that the referee shall also have full powers to settle and adjust, as part of the award, all questions between the parties in relation to the interests which the defendants are entitled to, justly and fairly, in the real estate of *Richard Dorsey*, deceased, in the proceedings mentioned; that each party waives all benefit of the statute of limitations; that the referee shall not be estopped by the accounts passed by, or allowances made to the defendants in the orphans' court, as administrators or guardians, from other or further just allowances to them, or increasing those already made, or from correcting in any manner any of the charges against them or either of them, if erroneous, or from rejecting any allowance made to the defendants, or lessening the allowance made; or from correcting in any manner any of the charges in their favor, if erroneous. That the accounts are *prima facie* for and against all parties, and the modifications above mentioned thereof, are intended to allow the introduction of evidence *dehors* to show that they are erroneous. And that the complainants are to have a view of all the vouchers for which allowances have been made, that are in the custody of

the defendants. The complainants admit, in relation to debts paid and other allowances made to the executors, they are not at liberty to show any error other than those which might be shown according to the opinion of the Court of Appeals, in *Collison vs. Owens*, notwithstanding any expressions and provisions in the antecedent part of this agreement.

Upon this agreement, on the 26th March 1836, an order was passed "that this case be and the same is hereby referred to the arbitrament and award of *Somerville Pinkney* of the city of *Annapolis*, according to the terms of the aforegoing agreement.

On the 25th March 1839, the arbitrator returned his award, as follows:

The undersigned, appointed referee in this case by an order passed on the 26th day of March 1836, having taken upon him the duty of making the award and arbitrament, and having been attended by the counsel and witnesses of the parties, has since considered the pleadings and proofs, and thereupon this 20th day of March 1839, awards and determines, that there is due to *Essex Dorsey* and *Ann* his wife, from the defendants *Thomas H. Dorsey* and *Ann* his wife, the sum of $4018.16, with interest on $2015.80, from the 1st day of January 1839, for her share of the personal estate of her late father, *Richard Dorsey of Caleb;* for her share of the rents of part of the real estate of said *Richard Dorsey,* for the balances on her guardian's accounts and for her share of the personal estate of her late brother, *Richard Dorsey of Richard.*

And he further awards and determines, that there is due to *Edward Dorsey* from the defendants, *Thomas H. Dorsey* and *Ann* his wife, for his the said *Edward Dorsey's* share of the personal estate of his late father, *Richard Dorsey of Caleb*, for his share of the rents of part of the real estate of the said *Richard Dorsey*—for the balances on his guardian's accounts, and for his share of the personal estate of his late brother, *Richard Dorsey of Richard*, $2106.23, with interest on $1641. 34, from the 1st day of January 1839.

And he further awards and determines, that there is due from

the complainant *Caleb Dorsey* to the defendant *Thomas H. Dorsey*, the sum of $1704.65, with interest on $1389.39 from the 1st day of January 1839, after allowing set off for his share of the aforesaid estates of *Richard Dorsey of Caleb* and *Richard Dorsey of Richard*, the aforesaid rents, the balances on his guardian's accounts, and his commission as administrator of *Richard Dorsey*—the amount so set off is $3182.88, as of the 18th March 1835.

He further awards and determines, that the defendant *Ann Dorsey* did not acquire any interest or estate under the will of *Richard Dorsey of Caleb*, deceased, in the farm devised to *Mrs. Watson*. The true construction of that will is, that the land vested in *Mrs. Watson* during her life with remainder in fee to the five children of the devisor. One of those children having died, his interest descended upon the four survivors—*Caleb Dorsey*, *Ann Dorsey*, *Edward Dorsey* and *Mary Sellman*, who, on the death of *Mrs. Watson*, were entitled to the possession. The referree awards and determines, that the defendant *Ann Dorsey* can claim fairly and justly a life estate in the home plantation of the said *Richard Dorsey of Caleb*, of which the farm devised to *Mrs. Watson* is not (according to the referee's construction of the will) a part.

The complainant *John S. Sellman*, having in his deposition before the undesigned, acknowledged that he had settled with the defendants so far as he was concerned in this controversy, nothing is awarded to him.

The undersigned further awards, that the case be entered agreed as between the complainant, *John S. Sellman*, and the defendants; that a decree shall be passed that the defendants pay, or bring into this court to be paid, to *Essex Dorsey* and *Ann* his wife, the sum of $4018.15, with interest on $2015.80 from the 1st January 1839, until paid or brought in; and that they pay, or bring into this court to be paid, to the complainant *Edward Dorsey*, the sum of $2106.23, with interest on $1641.34, from the 1st day of January 1839, until paid or brought in. That a decree shall be passed that the complainant *Caleb Dorsey* pay, or bring into this court to be paid, to

the defendant *Thomas H. Dorsey*, the sum of $1704.65, with interest on $1389.39 from the 1st day of January 1839, until paid or brought in. And the said decree shall provide, that upon payment of the last mentioned sum of money to the said *Thomas H. Dorsey*, he shall release the mortgage executed by the said *Caleb Dorsey* to him, bearing date the 31st day of March 1835, filed with the defendants answer, marked exhibit U, and also a mortgage recited in said exhibit, dated 24th of August 1828. The mortgage assigned to *Thomas H. Dorsey* and *John S. Sellman* by *Walsh* and *McQuinn*, and since assigned to *Thomas H. Dorsey*, is to be considered as satisfied. The referee does not think that he has a right, under the pleadings and proofs in the cause, to decree a foreclosure of the first mentioned mortgage, and sale of the mortgaged property.

The distribution of the personal estate of *Richard Dorsey of Richard* amongst his distributees, and payment to them instead of the administrator, is directed in the aforegoing award, *with the consent of the solicitors of the parties.*

The decree shall also provide for the payment by the defendants, of the costs of the complainants, *Essex Dorsey* and wife and *Edward Dorsey*, and for the payment by the complainant, *Caleb Dorsey*, of one-fourth of the defendants costs, the whole to be taxed by the register.

Exceptions were filed to this award on behalf of the defendants, which were overruled after argument, and a decree was passed by the Chancellor (BLAND) on the 14th May 1839, confirming the award.

The defendants appealed from this decree.

The cause was argued before STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

By A. RANDALL and J. JOHNSON for the appellants.

The bill in this case was filed by the appellees against the appellants, for a discovery, and account of the estate of *Richard Dorsey*, deceased, which came to the possession of the defendants in several distinct capacities.

It appears, that *Richard Dorsey* died in the year 1808, having shortly before duly executed his will, by which he devised

to his wife *Ann* (one of the defendants) his dwelling planta-
tion for life, and directed that his real estate, including his
dwelling plantation after her death, should be equally divided
among his five children, to wit, *Caleb, Edward, Ann, Richard*
and *Mary,* and that his personal estate should be equally divi-
ded between his said wife and children.

His wife was appointed executrix, and took upon herself the
execution of the trust.

In this capacity she returned an inventory, and an additional
inventory, amounting together to the sum of   $8,004.60

And a list of debts, sperate and desperate, amounting to
£759.7.2½, or   -   -   -   -   $2,024.95

And an additional list, for   -   -   -   100.00

She also settled sundry accounts with the orphans' court,
the last of which, passed on the 3rd April 1826, showed a
balance in her hands of   -   -   -   $7,711.80

After paying claims, &c., against the estate for   $5,972.24

There remaining so large a sum for distribution among the
representatives, after the payment of so much money, was ow-
ing principally, to the appreciation of the property in the hands
of the executrix, and her second husband, *Thomas H. Dorsey,*
the other defendant.

Upon the death of her first husband, *Mrs. Dorsey* was ap-
pointed guardian to his five children. Their estate, real and
personal, was appraised under the authority of the orphans'
court. at $613.33 a year, or $122.66⅔ to each child.

In her character of guardian, *Mrs. Dorsey* settled two ac-
counts for each child—one on the 25th of April 1810, the
other on the 25th April 1811, in which the court allowed her
the whole annual value of their estate, for their support.

In May 1811, she married *Thomas H. Dorsey,* one of the
present defendants, who thereupon became the guardian of the
children, except *Richard,* who was then dead, and as such
settled a series of accounts for each ward, commencing on the
11th of June 1811.

In consequence of the death of *Richard,* the $613.33 became
divisible among four instead of five, and the share of each,
therefore, was $153.33.

It would seem from the accounts, that the orphans' court reduced the allowance for the support of the wards, and thus, by the increase of the share of each in consequence of the death of *Richard*, there appears to have remained in the hands of *Thomas H. Dorsey*, as guardian, at the end of the first year, the sum of $95 due each of the four wards.

Similar balances, according to the accounts, were left in his hands at the expiration of every year, during the continuance of his guardianship, and yet these balances were not brought forward, upon the settlement of the successive accounts—and as no notice was taken of these balances when the final account was stated, the wards say they have been seriously injured.

In the case of *Caleb Dorsey*, the balances from 1811 to 1819 inclusive, amount to $855. In that of *Edward Dorsey*, from 1811 to 1821, to $1085; and in that of *Ann Dorsey* the wife of *Essex* to $ .

After the final account of the executrix, and the various accounts of the guardians had been passed, and the distributive share of each actually paid over to them, the appellees filed this bill, insisting upon numerous errors in the accounts of the executrix, and in the accounts of the guardians, and adverting particularly, to the omission to bring forward the above balances of $95, and the great injury which had resulted to them therefrom.

The accounts were all exhibited with, and made parts of the bill which prayed that the defendants, as executors, guardians or otherwise, might be compelled to account to the complainants, and to each of them, so as to determine the liabilities of the defendants, in those several capacities, or otherwise.

Upon the death of *Richard Dorsey* the son, letters of administration upon his estate, were granted to *Caleb Dorsey*.

After the filing the answer, and sundry exhibits, the case was referred to arbitration, under an agreement.

The agreement referred the matters in controversy in the cause, to the arbitrament, and award of the arbitrator, and authorised him to determine the amounts due the complainants,

from the defendants, or either of them, in their several characters of executors and guardians.

The arbitrator returned his award to March term 1839, in which he says, that having been attended by the counsel and witnesses of the parties, he proceeded to consider the pleadings and proofs, and thereupon awarded and determined, that there was due to *Essex Dorsey* and *Ann* his wife from the defendants *Thomas H. Dorsey* and *Ann* his wife, the sum of $4,018.16, with interest on $2,015.80 from the 1st January 1839, for her share of the personal estate of her late father, *Richard Dorsey;* for her share of the rents of part of the real estate of said *Richard Dorsey,* for the balances on his guardian's accounts, and for her share of the personal estate of her late brother, *Richard Dorsey of Richard;*—and that there was due from the said defendants, *Dorsey and wife,* to *Edward Dorsey,* on the same accounts, the sum of $2,106.23. He further awarded, that there was due from the complainant, *Caleb Dorsey,* to the defendant, *Thomas H. Dorsey,* $1,704.65, after allowing the said *Caleb* such sum as he was entitled to receive from the defendants, on the above accounts, and for his commission as administrator of *Richard Dorsey* the younger.

The arbitrator then proceeds to express his opinion upon the true construction of the will of *Richard Dorsey* the elder, and having awarded, that the case should be entered agreed, so far as *Sellman* was concerned, directed, that a decree should be passed, that the defendants pay, or bring into court to be paid, the sums awarded *Essex Dorsey and wife* and *Edward Dorsey;* and that a similar decree should pass, that *Caleb Dorsey* pay, or bring into court to be paid, the sum awarded to be due from him to the defendant *Thomas H. Dorsey.* The debt due from *Caleb* to said defendant was founded upon mortgage, and the award directed, that upon the payment of the money, releases should be executed.

But there is no direction, that upon the payment of the sums awarded the other complainants, receipts should be given by them, or satisfaction entered upon the record.

In distributing the personal estate of *Richard Dorsey* the

younger, directly among his distributees, instead of directing it to be paid to his administrator *Caleb*, the arbitrator says he acted with the consent of the solicitors of the parties. No such consent, however, appears in the record, and it is denied that any such was given.

In conclusion, the arbitrator professes to settle the question of costs, but omits to do so, in regard to one-fourth of them.

The defendants insist that the following grounds of exception are good.

1st. That as it appears by the bill and proceedings in the cause, that the defendants were called upon to account in several distinct capacities, the arbitrator should so far have discriminated, as to show how much was due from them respectively in each capacity, and yet, by his award, he has blended their responsibilities into one entire sum; thus making each liable for the other, and confounding the different characters in which they were required to account—and also making *Mrs. Dorsey* liable for the defaults of her husband *Thomas H. Dorsey*, after their marriage, and whilst he alone was guardian of the complainants.

2nd. That the said award is neither mutual or final. The want of mutuality consists, among other things, in not directing releases or satisfaction to be entered, upon the payment of the money awarded to be paid by the defendants to the complainants—and not final, in omitting to decide several of the questions submitted to the arbitrator.

3rd. That the said award is erroneous, in deciding matters not within the submission, which matters, thus out of the submission, are so connected with those which are within it, as to render it impossible to separate the one from the other.

In the argument of this point the appellants will insist, that the rights of *Caleb Dorsey*, as administrator of *Richard* the younger, were not included in the submission, he being, as such administrator, no party to the bill, and yet the arbitrator has adjudicated upon them;—and he has also allowed said administrator a commission as such, which was likewise the exercise of a power not confided to him.

4th. That the said award is defective in distributing the share of *Richard Dorsey* the younger, directly among his distributees, instead of awarding it to his administrator, who if properly before the court was entitled to receive it, and in omitting to award any part thereof to the defendant *Ann* his mother.

5th. That it is apparent upon the face of the award that the arbitrator has charged the defendants with the rents of real estate, in which the defendant, *Ann Dorsey*, had a life estate.

6th. That the award is void, because one of the parties to the submission is a married woman.

7th. That if the arbitrator had power to allow a commission to *Caleb Dorsey*, as administrator of *Richard*, he has so exercised the power, as to make the defendant, *Thomas H. Dorsey*, pay the whole of it, when he was only liable for a part.

8th. The appellants will also contend, that according to the terms of the submission, and the award of the arbitrator in this case, the Court of Chancery had no jurisdiction to pass the decree upon the award.

LLOYD and ALEXANDER for the appellees contended—

1. That the submission is good and obligatory upon all the parties thereto. It was competent for *Mrs. Dorsey*, notwithstanding her coverture, to bind her rights in this suit by a submission to arbitration. But if the law was otherwise, the objection will not avail her husband, who is likewise a party thereto. On the contrary, the court will oblige him to fulfil the engagements of his wife.

2. That the award observes the submission.

    1st. In deciding every question which was submitted to the arbitrator.

    2nd. In confining itself to the decision of such questions only as were sumitted. *Caleb Dorsey*, as administrator of *Richard*, was a party to the suit, and his rights as administrator were involved in the submission.

3. That from the character of the referee, who is a solicitor of the court—from the nature of the controversy, and from the terms of the submission—it is evident that the parties intended

to submit every question of law and fact to the decision of the arbitrator. Hence it is not competent for the appellants to rely on any supposed mistake of the arbitrator, in regard to any legal questions submitted to him.

4. That in truth the arbitrator has committed no mistake in matters of law or matters of fact. In discussing this point the appellees will

> 1st. Deny that *Mrs. Dorsey* has been made liable for the defaults of her husband after their marriage, and whilst he alone was guardian of the complainants.
>
> 2nd. Insist that the arbitrator did right in distributing the estate of *Richard Dorsey of Richard* directly amongst his distributees. In this particular he acted with the consent of the counsel for all the parties; and the award itself is conclusive evidence of such consent having been given.
>
> 3rd. That the defendants are not charged with the rents of any part of the real estate in which *Mrs. Dorsey* had a life estate. The question intended to be raised by the appellant's point to which this position of the appellees is an answer, is supposed to be, whether *Mrs. Dorsey* is entitled to a life estate in *Mrs. Watson's* farm? The construction of this part of the will is expressly submitted, and it will be apparent from an inspection of the will itself, that the arbitrator has rightly settled the question. And further, there is no proof that the defendants have been charged with the rents of this farm received by *Thomas H. Dorsey*.
>
> 4th. That the arbitrator in his adjustment of the account between the appellee *Caleb*, and the appellants, has not charged the appellants with any thing which is not properly chargeable against them.

5. That the award is likewise good in form. The decree being in *personam*, it was not necessary that the award should discriminate the sum due from the defendants in one capacity from the sum due from them in another capacity;—nor was it necessary that the award should direct mutual releases, &c.

6. That if the award is defective as to the sums awarded to *Essex Dorsey and wife* and *Edward Dorsey,* it is unexceptionable at least in regard to the matters in dispute between the appellants and *Caleb Dorsey*—and in regard to the title of the appellant *Ann* to *Mrs. Watson's* farm. And to this extent it may be confirmed, although in other respects it should be rejected or set aside.

7. That upon an award made pursuant to the submission in this cause, the Court of Chancery has jurisdiction to pass a decree.

SPENCE, J., delivered the opinion of this court.

We think in this case the award is void by reason of its uncertainty. The arbitrator should have set out in his award, on account of which of the defendants, the indebtedness accrued, and in what character.

The award is therefore set aside and the cause remanded to the Chancellor. And to that end this court will sign a decree.

DECREE REVERSED AND CAUSE REMANDED.